UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SOUTHERN REDI-MIX CORPORATION, ) | Chapter 11 |
| ) | Case No. 17-13790-FJB |
| Debtor. ) | |
| ) | |

### **FINAL ORDER AUTHORIZING FURTHER USE OF CASH COLLATERAL**

This matter having come before the Court on the motion of SOUTHERN REDI-MIX CORPORATION, the above-captioned debtor and debtor-in-possession in this proceeding (the "Debtor"), pursuant to Federal Rule of Bankruptcy Procedure 4001(d) and MLBR 4001-2 for an order authorizing the Debtor to use cash collateral in the ordinary course of its business (Docket No. 98, hereinafter the "Motion"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and notice of the Motion being good and sufficient notice under the circumstances; and it appearing from the record before the Court that sufficient cause exists for the entry of this Order; the Court

**FINDS AS FOLLOWS:**

A.     On October 12, 2017 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Court").

B.     The Debtor continues to operate its business as a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.

C.     The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.

1

D. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor is a concrete manufacturing and sales corporation which operates its business at 99 Clay Pit Road, Marshfield, Massachusetts (the "Premises"). The business operates under the name "Southern Redi-Mix". The corporation has been in continuous operations since its founding in 1986 and has approximately 13 employees on the Petition Date.

E. On October 12, 2017, the Debtor filed an Expedited Motion for Authorization of (1) Use of Cash Collateral, (2) The Granting of Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Additional Relief (hereinafter the "First Cash Collateral Motion"). See Docket No. 5.

F. The only replacement liens offered by and through the First Cash Collateral Motion related to Mechanics Cooperative Bank ("MCB"), which held the first priority secured interest in Debtor's Cash Collateral.

G. The First Cash Collateral Motion included a budget with projected cash collections and expenses through the end of November, 2017, which budget proposed a monthly payment to MCB in the amount of $1,906. The budget also proposed a monthly payment to Commercial Credit Group, Inc. ("CCGI") in the amount of $4,620.21. The budget did not propose payments to any other creditors secured in Debtor's Cash Collateral at that time.

H. The First Cash Collateral Motion was heard on an emergency basis on October 13, 2017, along with other "first day" motions, and was allowed on an interim basis with the Debtor to thereafter file an amended budget. A further hearing on Debtor's First Cash Collateral Motion was scheduled for November 9, 2017 and notice of the same was served upon all parties in interest. Docket Nos. 20, 37, 40, 44.

I. The Debtor filed an amended budget on October 23, 2017 (the "Amended Budget"), which repeated the proposed monthly payment to MCB in the amount of $1,906, proposed a Week 6 payment to CCGI in the amount of $8,500, and did not propose payments to any other creditors secured in Debtor's Cash Collateral at that time. See Docket No. 41.

J. On October 16, 2017, secured creditor Lehigh Cement Company ("Lehigh") objected to Debtor's First Cash Collateral Motion on the grounds that Debtor's proposed use of Cash Collateral did not provide Lehigh with a replacement lien.

K. On November 3, 2017, the Debtor filed a motion to approve a stipulation by and between itself and CCGI, which stipulation resolved CCGI's anticipated objections to Debtor's First Cash Collateral Motion. See Docket No. 51. Instead of attaching the Amended Budget, however, the proposed stipulation incorrectly contained the original budget that was filed on October 12. Id.

L. On November 8, 2017, CCGI filed its objection to Debtor's First Cash Collateral Motion on the grounds that the Amended Budget had not been docketed with the proposed stipulation. See Docket No. 57.

M. On November 8, 2017, the Debtor filed a supplemental budget (the "Supplemental Budget") with respect to its First Cash Collateral Motion and its proposed stipulation with CCGI. See Docket No. 59.

N. The Supplemental Budget included a budget with Week One, Two, and Three actual cash collections and expenses, along with projected cash collections and expenses through the end of December, 2017. Id. The Supplemental Budget repeated its proposed monthly payment to MCB in the amount of $1,906. Id. The Supplemental Budget repeated its proposed Week Six payment

to CCGI in the amount of $8,500, but added additional payments of $8,500 to CCGI for Week 8 and Week 10. Id.

O. After further hearing on Debtor's First Cash Collateral Motion, the Court approved Debtor's First Cash Collateral Motion on a final basis, and approved the proposed payments to CCGI on an interim basis pending further hearing on the proposed stipulation. See Docket Nos. 66, 67. On November 20, 2017, the proposed stipulation between the Debtor and CCGI was amended, see Docket No 97, but maintained the previously proposed payment amounts and schedule. Id. The further hearing on approval of the stipulation with CCGI was held on November 28, 2017. On December 1, 2017, this Court entered the stipulation and order on a final basis (the "CCG Stipulation and Order"). See Docket No. 119.

P. Because the Debtor's First Cash Collateral Motion did not include a proposed order, the Debtor and MCB jointly moved for approval of a stipulation and order to help define and effectuate the allowance of Debtor's First Cash Collateral Motion, which stipulation and joint motion for approval was held on November 28, 2017. See Docket Nos. 63, 87, 88. On December 1, 2017, this Court entered the stipulation and order with respect to MCB on a final basis (the "MCB Stipulation and Order"). Docket No. 120.

Q. In addition to MCB and CCGI, the additional creditors described in paragraphs R through V below (hereinafter referred to collectively as the "Secured Creditors" and each individually as a "Secured Creditor") assert that the proceeds in the form of cash or cash equivalents from the collection of any accounts receivable, the disposition of any inventory and the sale or other disposition or collection of all or any portion of any other Collateral, constitute and will constitute the Secured Creditors "cash collateral" as that term is defined in section

363(a) of the Bankruptcy Code (such cash or cash equivalents at any time constituting "cash collateral" as so defined being herein referred to as the "Cash Collateral").

  R. On or about February 2, 2016, Corporation Service Company, as Representative, filed a UCC-1 financing statement with the Office of the Secretary of State of Massachusetts, thereby allegedly perfecting its interests in all of the Debtor's assets, including its Cash Collateral.

  S. On or about May 17, 2016, Forward Financing filed a UCC-1 financing statement with the Office of the Secretary of State of Massachusetts, thereby perfecting its interests in the Debtor's Cash Collateral.

  T. On or about September 28, 2016, Lehigh Cement Company filed a UCC-1 financing statement with the Office of the Secretary of State of Massachusetts, thereby perfecting its interests in the Debtor's assets, including Cash Collateral.

  U. On May 10, 2017 at 8:13 A.M., Capital Stack filed a UCC-1 financing statement with the Office of the Secretary of State of Massachusetts, naming all borrowers collectively as the liable "organization" and allegedly perfecting its interests in the Debtor's assets, including its Cash Collateral.

  V. On May 10, 2017 at 8:13 A.M., Libertas Funding filed a UCC-1 financing statement with the Office of the Secretary of State of Massachusetts, thereby perfecting its interests in the Debtor's Cash Collateral.

  W. Other than MCB, CCGI, and the Secured Creditors, no other creditors hold a security interest in the Cash Collateral.

  X. The Debtor requires the use of the Cash Collateral in order to preserve its operations and the value of its assets. The entry of the relief contained in this Order is in the best interests of the Debtor, its bankruptcy estate and creditors.

Y. Attached to this order as Exhibit A is a budget (the "First Quarter Budget") indicating the Debtor's projected revenues and expenses through the week beginning March 18, 2018.

Z. Based upon the foregoing, the remaining Secured Creditors are entitled to adequate protection of their interest in the their Collateral to the extent that it consists of cash collateral, accounts receivable and inventory of the Debtor which are likely to revolve into post-petition property of the Debtor and to otherwise diminish in value.

AA. Due and adequate notice of the hearing has been given, and no further notice of the hearing is required before the entry of the relief provided for in this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted under the terms and conditions set forth in this Order. The Debtor is authorized to use cash collateral as provided in the First Quarter Budget through March 24, 2018 (the "Specified Period"). Except as otherwise expressly provided in this Order, Cash Collateral may be used solely during the Specified Period, and solely (a) up to the amounts stated for any line item for the purposes identified in the First Quarter Budget (attached as Exhibit A), or (b) as expressly consented to in advance in writing by the Secured Creditors.

2. Approval of the Debtor's continued use of cash collateral as set forth in the First Quarter Budget under the terms and conditions of the CCG Stipulation and Order (Docket No. 119), the MCB Stipulation and Order (Docket No. 120), and this Order, is without waiver to a creditor's right to move for modification or termination of such authorized use of cash collateral if there exists cause to do so.

3. In the event that a creditor moves to modify or terminate the Debtor's authorization to use Cash Collateral, then the Debtor's right to use Cash Collateral, except as

6

expressly provided herein, shall continue until the Court holds a hearing and issues a further order on the creditor's motion to modify or terminate the Debtor's authorization to use Cash Collateral.  Notwithstanding the foregoing, the Debtor's expenditures during the Specified Period may exceed, on an aggregate and not a line item basis, the First Quarter Budget (excluding therefrom any amounts set forth in the line item for the adequate protection payments) by no more than ten percent (10%).  Any unused amount in the First Quarter Budget for the Debtor's expenditures for any one week during the Specified Period shall be available in remaining weeks of the Specified Period but only to pay for line item expenditures provided for in the First Quarter Budget.

4. Upon request, the Debtor shall furnish to such Secured Creditors who request same (i) on or before the fifteenth business day of the month beginning January 15, 2018, (a) a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the immediately preceding month and (b) an accounts receivable aging report, and (ii) such other financial information and reports as such Secured Creditors shall reasonably request.  In addition, the Debtor shall provide the Secured Creditors who request same, immediately upon filing same with the office of the United States Trustee, copies of all monthly operating reports.

5. At any subsequent hearing on the further use of Cash Collateral, the Debtor shall provide the Court, MCB, CCGI, the Secured Creditors, the U.S. Trustee and the Creditors Committee, if appointed, a performance comparison of the budget projections to actual revenue and expenses and disbursements for the Specified Period and that comparison must be filed with the Court and delivered electronically to MCB, CCGI, the Secured Creditors, and the U.S. Trustee on or before 5:00 p.m. on the day prior to the date of the next scheduled hearing on further use of cash collateral.

6.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code and for purposes of section 507(b) of the Bankruptcy Code, as further adequate protection to the Secured Creditors for the Debtor's use of Cash Collateral, the Secured Creditors are hereby granted replacement liens and security interests (collectively, the "Replacement Liens") in the same types and kinds of the Debtor's property arising, acquired or created on or after the Petition Date in which the Secured Creditors hold pre-petition liens and security interests and such replacement liens and security interests shall extend to the proceeds and products of such post-petition property purchased or acquired with Cash Collateral including, without limitation, post-petition Cash Collateral. Said replacement liens and security interests shall secure an amount of each Secured Creditor's claim equal to the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Secured Creditor's Cash Collateral, whether resulting from the use of Cash Collateral, the imposition of the automatic stay, or otherwise. Such replacement liens and security interests shall have the same validity, enforceability, and priority <u>vis a vis</u> the Debtor, as debtor in possession, and <u>vis a vis</u> the liens and security interests of other creditors of the Debtor as existed immediately prior to the Petition Date.

7.  To the extent that the Replacement Liens fail to adequately protect each or any of the Secured Creditor against the diminution in value of their interests in the pre-petition Cash Collateral, the Secured Creditors shall have a superpriority claim pursuant to Bankruptcy Code § 507(b) to the extent of the use of Cash Collateral and any other diminution in value in the Secured Creditor's Collateral on and after the Petition Date.

8.  The Replacement Liens shall not attach to any avoidance powers held by any Debtor or any trustee for any Debtor, including those avoidance powers set forth in Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or to the proceeds of any claims

8

under or actions commenced pursuant to such powers. For the purposes of this Order, the term "collateral diminution" or "diminution in value" shall mean an amount equal to the aggregate diminution of the value of the Cash Collateral after the Petition Date.

9. Notwithstanding the expiration or termination of this Order, the terms and provisions of this Order with respect to the Replacement Liens granted herein shall continue for the duration of this Chapter 11 case and for the duration of this case under any other chapter of the Bankruptcy Code to which it may be converted, and the Replacement Liens shall maintain the priorities established by this Order until satisfied and discharged.

10. The validity and enforceability of all security interests, liens, transfers, and priorities authorized or created hereby shall survive the conversion of the Debtor's case to one administered under chapter 7 of the Bankruptcy Code or the dismissal of such case, if any.

11. Absent entry of an order granting continued use of Cash Collateral, use of Cash Collateral will terminate upon the earlier to occur of the following date (the "Termination Date"):

    a. The date upon which the Debtor fails to comply in any way with the terms and conditions of this Order and such failure is found by the Court, or;

    b. March 24, 2018.

12. However, in the event that a Secured Creditor believes that the Debtor has failed to comply with this Order for any reason or a Secured Creditor seeks modification or termination of the Debtor's use of Cash Collateral for any other reason, the Secured Creditor may file a motion to modify or terminate the use of cash collateral, and, subject to the Court's discretion, seek an emergency hearing on that motion.

13. Subject to the restrictions of this Order, including those set forth below in this paragraph, there shall be a carveout from the Collateral for (a) all administrative professional fees[1] pursuant to 28 U.S.C. § 1930, of up to $1,200.00 per week and (b) other administrative expense claims, including the United States Trustee's Fees. However, no proceeds of Collateral and no amounts received pursuant to this carveout shall be used to pay compensation or expense reimbursement of the Debtor, any committee, the United States Trustee or any professionals of the Debtor, the U.S. Trustee or any committee, or any other costs incurred, directly or indirectly, in respect of, arising from, or relating to: (i) the commencement or prosecution of any claims, objections, causes of action, contested matters, adversary proceedings, or other proceedings (including the preparation of any pleadings in respect thereof, but not including any investigation) seeking to (x) recover any damages or other amounts from the Secured Creditor, whether based on avoidance, tort, contract, equity, or otherwise, or (y) disallow, subordinate, reduce, impair, avoid, invalidate, recharacterize, recover, determine as unperfected or of less than first priority, or otherwise impair or defend against any or all of the Secured Creditor's claims, liens, the replacement liens granted herein, and (ii) any action to prevent, hinder, or delay performance or enforcement by a Secured Creditor of its rights or remedies under this Order or any of such Secured Creditor's loan documents; provided, that this clause (ii) shall not (x) include review and examination of the validity, perfection, and enforceability of Secured Creditor's claims, and the defenses thereto, or an action to the extent it seeks a determination whether a Default under this Order has occurred and is continuing or (y) be construed to prevent this Court from entering an order authorizing the use of Cash Collateral (including to pay allowed fees and expenses of counsel incurred in obtaining such order) after the Termination Date if the Court determines,

---

[1] All fees are subject to court approval.

10

after notice and a hearing, that adequate protection has been provided for such use. To the extent any payments are made from this limited carveout of Collateral, the amount due the Secured Creditors from the Debtor and from all obligors of the loans owed to Secured Creditors by the Debtor shall include the full amount of any carveout payments made. No amounts sought to be paid pursuant to this carveout shall be paid without the prior submission and approval of a fee application and the Court's approval of same and the Secured Creditors' rights to object to the payment of such fees and expenses is hereby preserved.

14. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Secured Creditors, that the Replacement Liens and the right to assert super-priority claims under Section 507(b) of the Bankruptcy Code granted to the Secured Creditors by this Order adequately protect the Secured Creditors for the Debtor's use of Cash Collateral or any other Collateral.

15. Nothing contained herein shall be a waiver of any rights of the Debtor or a creditors committee or trustee to object to the extent, amount, validity, and priority of any the Secured Creditors claims or liens.

16. Subject to applicable law, the terms of this Order shall be binding upon and inure to the benefit of the successors and assigns of the Secured Creditors, the Debtor and the Debtor's bankruptcy estate, including any Chapter 11 or Chapter 7 trustee appointed with respect to the Debtor.

17. The Debtor shall be and hereby is authorized and empowered to execute such documents, make and deliver any and all instruments, and do such things as may be necessary to implement the terms of this Order and effectuate the transactions approved hereby.

BY THE COURT

*/s/ Frank J. Bailey/*

Hon. Frank J. Bailey
United States Bankruptcy Judge

Dated:     12/22/2017

| | | Actual 8 12/3/2017 | Forecast 9 12/10/2017 23743 | Forecast 10 12/17/2017 | Forecast 11 12/24/2017 | Forecast 12 12/31/2017 | Forecast 13 1/7/2018 | Forecast 14 1/14/2018 | Forecast 15 1/21/2018 | Forecast 16 1/28/2018 | Forecast 17 2/4/2018 | Forecast 18 2/11/2018 | Forecast 19 2/18/2018 | Forecast 20 2/25/2018 | Forecast 21 3/4/2018 | Forecast 22 3/11/2018 | Forecast 23 3/18/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning cash (Book) | | 36,157.78 | 23,743 | 18,731 | 14,269 | 22,868 | 11,876 | 27,059 | 43,748 | 51,342 | 71,754 | 74,048 | 77,542 | 77,636 | 70,298 | 70,307 | 74,502 |
| **CASH COLLECTIONS** | | | | | | | | | | | | | | | | | | |
| Receipts Checks | | 42,325.49 | 75,000 | 67,000 | 67,000 | 33,000 | 60,000 | 60,000 | 58,000 | 53,000 | 46,000 | 44,000 | 44,000 | 44,000 | 52,000 | 54,000 | 54,000 |
| Credit Card Sales | | 15,270.96 | 9,500 | 6,500 | 2,000 | 2,000 | 6,500 | 6,500 | 7,000 | 6,000 | 3,200 | 3,200 | 3,200 | 3,200 | 3,900 | 4,100 | 4,100 |
| Cash Sales | | | 500 | 500 | 200 | | | | | | | | | | | | |
| **Total Funds Available** | | **93,754.23** | **108,743** | **92,731** | **83,469** | **57,868** | **78,376** | **93,559** | **108,748** | **110,342** | **120,954** | **121,248** | **124,742** | **124,836** | **126,198** | **128,407** | **132,602** |
| **Cost of Goods Sold** | | | | | | | | | | | | | | | | | | |
| Direct Materials | $ | 22,310.78 | 40,000 | 37,000 | 20,000 | 8,000 | 16,625 | 16,625 | 16,450 | 14,750 | 12,300 | 11,800 | 11,800 | 11,800 | 13,975 | 14,525 | 14,525 |
| Payroll including burden Footnote A and B | $ | 23,845.40 | 23,000 | 23,000 | 23,000 | 18,000 | 17,000 | 17,000 | 15,000 | 15,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,500 | 14,750 | 14,740 |
| Fuel Utilities and trucking Footnote 14 | $ | 2,257.25 | 8,000 | 8,000 | 4,000 | 1,500 | 4,500 | 4,500 | 4,500 | 3,500 | 2,800 | 2,800 | 2,800 | 2,800 | 3,500 | 3,500 | 3,500 |
| **Sub total** | $ | 48,413.43 | 71,000 | 68,000 | 47,000 | 27,500 | 38,125 | 38,125 | 35,950 | 33,250 | 29,100 | 28,600 | 28,600 | 28,600 | 31,975 | 32,775 | 32,765 |
| **EXPENSES** | | | | | | | | | | | | | | | | | | |
| Advertising | $ | | | | | | | | | | | | | | | | | |
| Auto and Tolls | $ | 126.00 | 50 | | | | | | | 100 | | | | | | | | |
| Fuel Retail | $ | 556.95 | | | | 150 | 100 | | | | 150 | 150 | 150 | 150 | | | 150 |
| Payroll Service | $ | 66.50 | 81 | 81 | 81 | 69 | | 66 | 66 | 66 | 66 | 66 | 66 | 66 | 68 | 68 | 68 |
| CC Expense/Bank | $ | 98.00 | 371 | 277 | 150 | 350 | 325 | 325 | 325 | 325 | 225 | 225 | 225 | 225 | 250 | 260 | 285 |
| water | $ | | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Professional Services Footnote 1 | $ | | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Registration/Excise Tax Footnote 2 | $ | | 12,000 | | | | | | | | | | | | | | | |
| Permits(Over Weight/Heavy Highway) | $ | | 4,000 | | | | | | | | | | | | | | | |
| Meals T/E | $ | | | | 1,000 | | 75 | | | 75 | | | | | 75 | | | |
| Software Footnote 3 | $ | | | | | | | | | | | | | | | | | |
| Drug testing Footnote 4 | $ | | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 |
| Plant and Equipment Repairs | $ | 6,644.11 | | | 1,500 | | | | | | | | | 1,500 | | | | |
| Tires | $ | | | | 1,200 | | | | | | | | | | | | 1,200 | |
| Equipment and Truck rental | $ | | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 | 45 |
| Trash | $ | 319.07 | 200 | 200 | 200 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 | 290 |
| Office, Phones, IT | $ | | | | | | | | | | | | | | | | | |
| It billing upgrade | $ | | | | | | | | | | | | | | | | | |
| Donations and Discounts | $ | | | | | | | | | | | | | | | | | |
| Rents | $ | | | | | | 1,000 | | | 9,125 | | 7,500 | | 9,125 | 7,500 | | 9,125 | |
| Insurance Property/vehicle/WC Footnote 7 | $ | 13,920.93 | | | 9,125 | | 6,500 | | | | | | 6,000 | | | | | 6,000 |
| Insurance Health (Employee Reimbursement) | $ | | (918) | (918) | (918) | (610) | (610) | (610) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) |
| Taxes - Real Estate | $ | | | | 941 | | | | | | 941 | 0 | 941 | 941 | | | | |
| Owner Draw | $ | | | | | | | | | | | | | | | | | |
| Bad Debt Expense | $ | | | | | | | | | | | | | | | | | |
| Interest Expense | $ | | | | | | | | | | | | | | | | | |
| Operational Expenses | $ | 24,731.56 | 17,106 | 1,962 | 13,601 | 9,246 | 1,393 | 1,393 | 10,728 | 2,669 | 8,903 | 7,553 | 1,403 | 12,969 | 9,005 | 10,565 | 8,815 |
| Sales Tax DOR | $ | | | | | | | 8,900 | | | | | | 7,200 | | | 5,650 | |
| Sub total outflows inc. direct costs | $ | 70,144.99 | 88,106 | 69,962 | 60,601 | 45,992 | 40,911 | 49,811 | 57,406 | 38,588 | 46,906 | 43,706 | 38,606 | 54,538 | 49,985 | 53,905 | 56,045 |
| Sub Total available funds | $ | 93,754.23 | 108,743 | 92,731 | 83,469 | 57,868 | 78,376 | 93,559 | 108,748 | 110,342 | 120,954 | 121,248 | 124,742 | 124,836 | 126,198 | 128,407 | 132,602 |
| Sub Total Net Cash Flow | $ | 23,609.24 | 20,637 | 22,769 | 22,868 | 11,876 | 37,465 | 43,748 | 51,342 | 71,754 | 74,048 | 77,542 | 86,136 | 70,298 | 76,213 | 74,502 | 76,557 |
| **Lien Holders Vehicles** | | | | | | | | | | | | | | | | | | |
| Amur/Axis Capital/Triton | | | | | | | | | | | | | | | | | | |
| Commercial Credit Group | | | | | | | | | | | | | | | | | | |
| Commercial Credit Group | | | | | 8,500.00 | | | 8,500.00 | | | | | | 8,500.00 | | 4,000.00 | | |
| First Citizens Federal Credit Unit | | | | | | | | | | | | | | | | | | |
| Peoples United | | | | | | | | | | | | | | | | | | |
| Harbor One Bank | | | | | | | | | | | | | | | | | | |
| Ford Motor Corp | | | | | | | | | | | | | | | | | | |
| TCF | | | | | | | | | | | | | | | | | | |
| Wells Fargo | | | | | | | | | | | | | | | | | | |
| Mechanics Cooperative Bank | | | | | | | | | | | | | | | | | | |
| **Sub Total Lien Holders Vehicles** | $ | | | | 8,500.00 | | | 8,500.00 | | | | | | 8,500.00 | | 4,000.00 | | |
| Subtotal Cash Flow | $ | 23,609.24 | 18,731.00 | 14,269.00 | 22,868.00 | 11,876.00 | 27,059.00 | 43,748.00 | 51,342.00 | 71,754.00 | 72,142.00 | 77,542.00 | 77,636.00 | 70,298.00 | 70,307.00 | 74,502.00 | 76,557.00 |
| Junior Lien Holder Interest | $ | | | | | | | | | | | | | | | | | |
| to other collateral paymet TBD | $ | | | | | | | | | | | | | | | | | |
| Forward Financial | $ | | | | | | | | | | | | | | | | | |
| Capital Stack ACH | $ | | | | | | | | | | | | | | | | | |
| Libertas 1 and 2 | $ | | | | | | | 1,906.00 | | | 1,906.00 | | | | 1,906.00 | | | |
| Lehigh | $ | | 1,906.00 | | | | | | | | | | | | | | | |
| **Sub Total Jr. Lien Holders** | $ | | 1,906.00 | | | | 1,906.00 | | | 1,906.00 | | | | | 1,906.00 | | | |
| **Secured Obligations** | | | | | | | | | | | | | | | | | | |
| **ENDING CASH Cummulative** | $ | 23,609.24 | 18,731.00 | 14,269.00 | 22,868.00 | 11,876.00 | 27,059.00 | 43,748.00 | 51,342.00 | 71,754.00 | 72,142.00 | 77,542.00 | 77,636.00 | 70,298.00 | 70,307.00 | 74,502.00 | 76,557.00 |
| **Weekly Cash Net of Beg.(Book)** | $ | (12,548.54) | (5,012.00) | (4,462.00) | 8,599.00 | (10,992.00) | 15,183.00 | 16,689.00 | 7,594.00 | 20,412.00 | 388.00 | 3,494.00 | 94.00 | (7,338.00) | 9.00 | 4,195.00 | 2,055.00 |

Footnote A and B  weekly Payroll/A=$20,599.58 pre petition, B=Approx $14,118.53 pre petition.
Footnote 1  Legal and CPA estimates
Footnote 2  Due April $21,000 est
Footnote 3  Due Dec. $6,100 est
Footnote 4  DOT compliance

| | |
|---|---|
| Footnote 5 | Waste Management |
| Footnote 6 | Office 500 sf Plain Street $525 mo. |
| | Use fee Clay Pit Rd $12,500/mo |
| | Lease Plant $1 annual |
| | Negotiating with LL for use fee of $7,500 |
| Mgt Comment | Original term of a 5yr lease expired |
| Footnote 6 | 7/31/2017 @$5k per month, |
| | market incr 3% to 5%, negotiating with LL, for $5200 month, Actual @ $5,200 month |
| | paid through Jan 15, 2018 |
| Footnote 7 | Ins Pck, adjusted for returns |
| Footnote 8 | Health and Dental insurance for 6 |
| Footnote 8A | Reimbursement 50% employee paid |
| Footnote 9 | TCF-The Debtors Estate surrenders equipment |
| Footnote 10 | Mechanics Bank paid per existing loan |
| Footnote 11 | The holders of these claims in Collateral that the Debtor deems as junior to the interest in other Lenders interests are listed here and their claims are subject to a determination of the extenst, amount and validity of their interest in the Collateral of the Debtor's Estate. |
| Footnote 12 | Ford-The Debtors Estate surrenders vehicle |
| Footnote 13 | First Citizens-The Debtors Estate Surrenders vehicle |
| Footnote 14 | Trucking $10,000.00 payment in advance of service |